# 13-959(cv)

*To Be Argued By:*
CLAUDIA A. BAIO and/or JOSEPH M. BUSHER

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆ ◆ ◆

JANE DOE, acting as next best friend of her 3 minor children,

*Plaintiff,*

JOHN DOE 1,

*Plaintiff-Appellant,*

—against—

PETER WARAKSA, MARY BUCKLEY, TOWN OF EAST WINDSOR,

*Defendants-Appellees.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

## BRIEF FOR DEFENDANT-APPELLEE MARY BUCKLEY

JOSEPH M. BUSHER, ESQ.
JACKSON O'KEEFE
36 Russ Street
Hartford, Connecticut 06106
(860) 278-4040

CLAUDIA A. BAIO, ESQ.
BAIO & ASSOCIATES
15 Elm Street
Rocky Hill, Connecticut 06067
(860) 571-8880

*Attorneys for Defendant-Appellee Mary Buckley*

## **TABLE OF CONTENTS**

Table of Authorities..................................................................2

Issues Presented for Review.....................................................3

Statement of the Case.........................................................4-5

Statement of the Facts.......................................................6-13

Standard of Review..............................................................14

Argument..........................................................................15-30

I.     The District Court Properly Ruled That
        Peter Waraksa Did Not Act Under Color of Law
        for Purposes of 42 U.S.C. §1983
        When He Sexually Assaulted the Defendant
        John Doe 1..............................................................15-27

         a. "Under Color of Law" Generally...........................15-17

         b. The Plaintiff's Subjective View Versus
            the Actions of the Defendant...........................17-27

II.    The District Court Did Not Make Improper
        Credibility Determinations Regarding
        the Affidavit Testimony of John
        Doe 1.....................................................................27-30

Conclusion...........................................................................30

Certificate of Compliance with Federal Rule of Appellate
Procedure 32(A)...................................................................31

Certificate of Service.............................................................32

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                    <u>Pages</u>

<u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242 (1986)..............passim

<u>Castillo v. United States</u>, 34 F.3d 443 (7th Cir. 1997)....................27

<u>Celotex Corp v. Catrett</u>, 477 U.S. 317 (1986)...............................14

<u>Colby v. Klune</u>, 178 F.2d 872 (2d Cir. 1949)..................................27

<u>Doe v. Bone</u>, 2012 WL 3544754 (S.D.Ohio)................................16

<u>Doe 1 v. Peterson</u>, 1998 WL 603274 (N.D.Ill. 1998)................16

<u>Haberthur v. City of Raymore, Missouri</u>, 119 F.3d 720
(8th Cir. 1997).............................................................................15

<u>Lipton v. The Nature Co.</u>, 71 F.3d 464 (2d Cir. 1995)......................27

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp</u>.,475 U.S. 574
(1986) .............................................................................................14

<u>Monsky v. Moraghan</u>, 127 F.3d 243 (1997).......................................passim

<u>Pritchell v. Callan</u>, 13 F.3d 545 (1994).......................................passim

<u>Roe v. Humke</u>, 128 F.3d 1213 (8th Cir.1997)..................................24,25

<u>United States v. Giordano</u>, 442 F.3d 30 (2nd Cir 2006)..............passim

<u>United States v. Temple</u>, 447 F.3d 130 (2nd Cr.2006)....................passim

<u>West v. Atkins</u>, 487 U.S. 42 (1988)...........................................16

<u>Zambrana-Marrero v. Suarez-Cruz</u>,172 F.3d 122 (1st Cir. 1999)
.........................................................................................................passim

<u>Statutes and Rules</u>
Fed.R.Civ.P. 56(c)........................................................................14

42 U.S.C. §1983..............................................................................15

## ISSUES PRESENTED FOR REVIEW

1. Did the District Court properly conclude that the Defendant, Peter Waraksa, did not act "under color of law" for the purposes of 42 U.S.C. §1983?

### STATEMENT OF THE CASE

Plaintiff Jane Doe commenced this action individually and on behalf of her three children, the minor plaintiffs John Doe #1, John Doe #2, and John Doe #3, against the defendants Peter Waraksa, Mary Buckley, and the Town of East Windsor. This action stems from sexual assaults the defendant Peter Waraksa allegedly committed against the minor plaintiffs from the summer of 2005 until September of 2005. It is further alleged that the defendant Peter Waraksa used his office and position with the Town of East Windsor Emergency Management to repeatedly sexually assault the Plaintiff's three minor children, including but not limited to hosting multiple sleepovers for youth cadets at his house the night preceding early morning Emergency Management events. Defendant Mary Buckley is alleged to have authorized defendant Waraksa to organize a youth cadet program to introduce and involve minor children into the Emergency Management Agency of the Town of East Windsor. The Plaintiffs allege causes of action sounding in sexual assault and battery of a minor, negligent infliction of emotional distress, intentional infliction of emotional distress, and negligence per se against the defendant Mary Buckley.

This is an appeal from the District Court's decision granting the Defendants', Mary Buckley's and the Town of East Windsor's, Motions for Summary Judgment. The District Court

4

entered judgment as a matter of law on the basis that Peter Waraksa was not a state actor acting under color of law as required by 42 U.S.C. §1983. The District Court's decision focused on the question of whether Waraksa acted under color of law. The District Court declined to rule on the remaining elements of 42 U.S.C. §1983, as it was unnecessary since the Court determined that Defendant was not acting under color of law. The Court also declined to rule on the state law claims, as without a valid claim under 42 U.S.C. §1983, the Court declined to exercise jurisdiction over the state law matters.

The John Doe claims under 42 U.S.C. §1983 are improper, as Peter Waraksa was not acting under color of law. Mary Buckley's position as Director of the Town of East Windsor Emergency Management Agency was not in any way connected to the actions of Peter Waraksa. She had no reason to know that Peter Waraksa might harm John Doe 1. Peter Waraksa's actions were separate and distinct from his position in the Emergency Management Agency and occurred at his personal residence outside the control of the Mary Buckley and the Emergency Management Agency.

## STATEMENT OF FACTS

During the approximate period of 1992 to December of 2005 defendant Mary Buckley was the director of the Town of East Windsor Emergency Management. <u>Affidavit of Mary E. Buckley dated September 30, 2010. (Hereinafter "Buckley Affidavit"), ¶4.</u> She is a retired state trooper for the State of Connecticut having served during the approximate period of June 1980 until September of 2007. <u>Buckley Affidavit, ¶3.</u> Sometime in 2003, the defendant, Peter Waraksa, (hereinafter "defendant Waraksa") approached Mary Buckley about joining Emergency Management as a member and Mary Buckley subsequently allowed him to participate in a few activities/events before he became a volunteer/member of the organization. <u>Id</u>. He eventually became the deputy assistant director for Emergency Management and held that position during May through August of 2005. <u>Buckley Affidavit, ¶6; See Transcript of Mary Buckley Deposition dated April 22, 2010, (hereinafter "Buckley Depo.")pp.43-44.</u> Although defendant Waraksa was Mary Buckley's neighbor, her dealings with him were primarily professional in nature in connection with Emergency Management. <u>Buckley Affidavit, ¶7; Buckley Depo., pp. 46-47, 57.</u>

Plaintiff Jane Doe met Peter Waraksa's wife, Sherry Waraksa, in May of 2001 at the bus company where the plaintiff and Mrs. Waraksa both worked. <u>Transcript of plaintiff Jane Doe Deposition dated April 19, 2010, (hereinafter "Jane Doe Depo.")</u>

pp.24-25; Deposition Transcript of Sherry Farrar (f/k/a Waraksa) dated June 25, 2010, (hereinafter "Farrar Depo.") p.20. Jane Doe met Peter Waraksa in June of 2001. Jane Doe Depo. pp. 24-25; Farrar Depo. p. 20. During the period of approximately June of 2001 until 2004 Jane Doe periodically went with her sons, John Doe #1, John Doe #2, and John Doe #3, to the Waraksa house to swim and for barbecues. Jane Doe Depo., pp.25-27. During the period of June of 2001 until sometime in 2005, Jane Doe considered Sherry Waraksa and Peter Waraksa to be really good friends who she trusted. Jane Doe Depo., pp. 24-25, 33-35. After Jane Doe had known Sherry Waraksa for a couple of years she started having Sherry and Peter Waraksa watch her children, in 2003 or 2004. Jane Doe Depo., p.43.

At some point before May of 2005 Peter Waraksa asked Mary Buckley if John Doe #1 could participate in activities associated with Emergency Management, which she approved as the director because another minor child who was the son of another member's girlfriend had previously been allowed to participate in Emergency Management activities. Buckley Affidavit, ¶9; Buckley Depo., pp. 98-99. Mary Buckley denies that as director of Emergency Management she organized or requested that a formal youth cadet group or program be organized regarding Emergency Management. Buckley Affidavit, ¶ 11; Buckley Depo., pp. 50-51.

At no time were the minor plaintiffs John Doe #2 or John Doe #3 members of or volunteers for Emergency Management. Buckley Affidavit, ¶10; Jane Doe Depo., p. 51. All of the communications plaintiff Jane Doe had about John Doe #1 joining Emergency Management were with defendant Waraksa, who she considered to be a close friend. John Doe #1 wanted to join the Emergency Management. Jane Doe Depo., pp. 67-69. The first time John Doe #1 stayed overnight at the Waraksa home was in 2004 and the first time John Doe #1, John Doe #2 and John Doe #3 all stayed overnight at the Waraksa home was in 2005 when Jane Doe started working. Jane Doe Depo., pp. 59-60. There were times in 2004 and 2005 when John Doe #1 would stay overnight at the Waraksa home for reasons that had nothing to do with Emergency Management. Jane Doe Depo., pp. 31-32, 60; See Deposition Transcript of John Doe #1 dated April 19, 2010, (hereinafter "John Doe #1 Depo.") pp. 34-35. During approximately May to August of 2005 Jane Doe's children, the minor plaintiffs, stayed overnight on Friday nights at the Waraksa residence while Jane Doe was working and prior to East Windsor Emergency Management events. See Plaintiff Jane Doe's Responses dated September 14, 2009 to Defendant Mary Buckley's First Set of Interrogatories and Requests for Production, Response to Interrogatory 2.

The last time John Doe #1, John Doe #2 and John Doe #3 stayed overnight at the Waraksa home was in mid-summer of 2005,

probably sometime in August of 2005. <u>Jane Doe Depo., pp. 52-53,</u>
<u>75-76</u>. Defendant Waraksa began engaging in sexual abuse and/or
misconduct in relation to John Doe #1, John Doe #2 and John Doe
#3 around Memorial Day 2005. <u>See, Deposition Transcript of Peter</u>
<u>Waraksa dated June 14, 2010, (hereinafter "Waraksa Depo.") pp.</u>
<u>76-80</u>. Mary Buckley never witnessed any sexual abuse, misconduct
or assaults perpetrated by defendant Waraksa against the minor
plaintiffs. <u>Buckley Affidavit, ¶12.</u> None of the alleged acts of
sexual misconduct, abuse, or assaults by Peter Waraksa occurred
in Mary Buckley's home, but instead all occurred at Peter
Waraksa's home. <u>Buckley Affidavit, ¶28; Jane Doe Depo., p. 45;</u>
<u>John Doe #1 Depo., pp. 32, 34</u>. There were times when defendant
Waraksa would touch the minor plaintiffs or make comments about
swimming naked in the pool in plaintiff Jane Doe's presence and
Jane Doe would tell Peter Waraksa not to do so. <u>Jane Doe Depo.,</u>
<u>pp. 41-42, 73.</u>

No sexual abuse was perpetrated by defendant Waraksa
against the minor plaintiffs after September 19, 2005. <u>See</u>
<u>Plaintiff Jane Doe's Responses to Defendant Mary Buckley's</u>
<u>Request for Admissions dated October 13, 2009, (hereinafter</u>
<u>"Jane Doe's Responses to Request for Admissions"), Responses 3,</u>
<u>4 and 5.</u> Plaintiff Jane Doe is unaware of the existence of any
documentary evidence or non-documentary evidence to establish
that any of the abuse perpetrated by defendant Waraksa against

the minor plaintiffs occurred after September 19, 2005. <u>Jane
Doe's Responses to Request for Admissions, Responses 1 and 2.</u> On
September 19, 2005 the East Windsor Police Department requested
that Mary Buckley go to the residence of defendant Waraksa
because there was a concern he was suicidal. <u>Buckley Affidavit,
¶ 21</u>. When Mary Buckley went to Peter Waraksa's residence at the
request of the East Windsor Police Department on September 19,
2005 she was off duty as a state trooper and was wearing
civilian clothes. <u>Buckley Affidavit, ¶22.</u> While Mary Buckley was
at defendant Waraksa's residence with members of the East
Windsor Police Department and paramedics, she believed that
Peter Waraksa was upset because of problems he was having with
his wife and his finances of which she had prior knowledge.
<u>Buckley Affidavit, ¶23</u>. She had no suspicion that his suicidal
thoughts involved any criminal misconduct on his part. <u>Id.</u>

   While Mary Buckley was at the Waraksa residence on
September 19, 2005 defendant Waraksa pointed to a note pad which
he stated to everyone present contained notes that he had made
regarding his thoughts. <u>Buckley Affidavit, ¶24.</u> He did not
specify in Mary Buckley's presence what those thoughts were. <u>Id</u>.
Mary Buckley did not read the notes on the notepad because she
could not since she did not have her reading glasses with her.
<u>Buckley Affidavit, ¶25.</u> She thought that the notes might pertain
to defendant Waraksa's problems with his wife or his finances,

so she gave him the notes and told him to share them with his doctor. Id. She did not think it was anyone's business to read about his marital or financial difficulties. Id. She took no further action with regard to those notes or any portion of the notepad, and she never saw either of them again. Id. During this incident on September 19, 2005, Mary Buckley did speak with defendant Waraksa generally about whether he wanted her to notify anyone about his situation and if he wanted her to feed his cat. Buckley Affidavit, ¶26. He did not tell her that he had sexual urges towards any children and he did not tell her that he had harmed the minor plaintiffs in any manner whatsoever. Id. At no point that evening did he tell her why he was upset. Id. Defendant Mary Buckley maintains that at no point on September 19, 2005 did she attempt to hinder any police investigation of Peter Waraksa, nor was that her intent. Buckley Affidavit, ¶27. Her understanding was that the East Windsor police officers present were assessing whether defendant Waraksa was a danger to himself and were not conducting a criminal investigation. Id.

At no time during the period that Peter Waraksa perpetrated sexual abuse or misconduct or committed any sexual assaults against the minor plaintiffs was Mary Buckley aware, in her individual capacity, as a state trooper, or as director of Emergency Management, that the sexual abuse, misconduct, or

assaults were being committed. Buckley Affidavit, ¶13-20;
Waraksa Depo., pp. 49, 82-83.

Neither plaintiff Jane Doe nor plaintiff John Doe #1 ever
communicated to Mary Buckley about the misconduct that defendant
Waraksa perpetrated against the three minor plaintiffs. Buckley
Affidavit, ¶20; Jane Doe Depo., p. 44; John Doe #1 Depo., p. 34.
None of the alleged acts of sexual misconduct, abuse, or
assaults by defendant Waraksa against the minor plaintiffs were
committed with Mary Buckley's knowledge or with her consent.
Buckley Affidavit., ¶29.

At no time prior to December of 2005 did Mary Buckley
suspect in her individual capacity, as a state trooper or as
director of Emergency Management, that defendant Waraksa had
harmed the minor plaintiffs in any manner. Buckley Affidavit.,
¶14. In early December of 2005, Mary Buckley learned for the
first time, based on what was told to her by Captain Duffy of
the East Windsor Police Department, that Peter Waraksa was
suspected of having molested children. Buckley Affidavit., ¶15.
She did not become aware of the allegations against defendant
Waraksa regarding the minor plaintiffs until after Waraksa's
arrest in December of 2005. Buckley Affidavit., ¶16; Buckley
Depo., p. 101. Mary Buckley first became aware that defendant
Waraksa was suspected of having sexual urges towards children
and of possessing or viewing child pornography based on

12

information provided by the East Windsor Police Department after defendant Waraksa's arrest in December of 2005. Buckley Affidavit, ¶17; Buckley Depo., p. 101. At no time prior to December of 2005 did defendant Waraksa tell Mary Buckley that he had sexual urges towards the minor plaintiffs or any children, possessed or viewed child pornography, or had harmed the minor plaintiffs in any manner whatsoever. Buckley Affidavit, ¶18. At no time prior to December of 2005 did Mary Buckley suspect defendant Waraksa of having sexual urges towards any children, including the minor plaintiffs, or of possessing children pornography. Buckley Affidavit, ¶19. At no time prior to December of 2005 did anyone in any manner communicate to Mary Buckley in her individual capacity, as a state trooper, or as director of Emergency Management, any suspicions or concerns about defendant Waraksa with respect to child pornography or to issues of sexual misconduct, abuse, or assaults by him against any children, including the minor plaintiffs. Buckley Affidavit, ¶20; Buckley Depo., p. 101.

Mary Buckley did not believe that the minor plaintiffs or any other children would be exposed to harm by Peter Waraksa when he became a member of Emergency Management in 2003 or during anytime that she knew him up until the time of his arrest in December of 2005. Buckley Affidavit., ¶30.

## STATEMENT OF STANDARD OF REVIEW

Summary judgment is appropriate in any case when the materials of record show that no genuine issue exists as to material facts and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Summary judgment must be granted if the party opposing the motion "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, (1986). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

14

**ARGUMENT**

I.  **The District Court Properly Ruled That Peter Waraksa Did Not Act Under Color of Law for Purposes of 42 U.S.C. §1983 When He Sexually Assaulted the Plaintiff, John Doe 1.**

A. **"Under Color of Law" Generally**

The District Court properly ruled that Peter Waraksa did not act under color of law for the purposes of 42 U.S.C. §1983 when he sexually assaulted the Plaintiff, John Doe #1. The evidence before the Court was insufficient to show that there were any issues as to material facts, even when taken in a light most favorable to the plaintiff/appellant.

42 U.S.C. §1983 states, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

42 U.S.C. §1983. However, "[s]ection 1983 is intended to remedy egregious conduct, and not every assault or battery which violates state law will create liability under it." Haberthur v. City of Raymore, Missouri, 119 F.3d 720, 723 (8th Cir.1997). Such is the case here. While the allegations as alleged would violate state law, they do not rise to the level of being under

color of law and, therefore, there is no liability under 42 U.S.C. §1983.

The Court has held that "[t]he traditional definition of acting under color of state law requires that the defendant in a §1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988)(emphasis added); see also Doe 1 v. Peterson, 1998 WL 603274, *5 (N.D.Ill. 1998). This definition alone is enough to show that the plaintiff cannot show that the defendant, Waraksa, was acting under color of law because Waraksa had a prior relationship with John Doe #1 and his family, and therefore access to John Doe #1, based on a personal connection of John Doe 1's mother and defendant Waraksa's then wife. See Jane Doe Depo, pp. 24-7, 31-35, 43, 59-60, 52-53, 75-76; Farrar Depo, pp. 20; John Doe Depo, pp. 34-35.

Additionally, "[i]n distinguishing private action from state action, the general inquiry is whether 'a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or ... is such that the actor could not have behaved in that way but for the authority of his office.'" Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999); see also Doe v. Bone, 2012 WL 3544754, *9 (S.D.Ohio). Defendant Waraksa's actions were not undertaken in the course of

performing any actual or apparent duties, as sleepovers could in
no way been seen as a duty of his "office," and this was not a
situation where he could not have done what he did "but for the
authority of his office," because he had an outside prior
relationship with John Doe #1 and his family that stemmed from
his personal life and was not connected in any way to his
position with the Emergency Management Agency.  <u>See Jane Doe
Depo, pp. 24-7, 31-35, 43, 59-60, 52-53, 75-76; Farrar Depo, p.
20; John Doe Depo, pp. 34-35.</u>

### B. <u>The Plaintiff's Subjective View Versus the Actions of the Defendant</u>

"Although the subjective reactions of the victim may have
some relevance, <u>'the primary focus of the color of law analysis
must be on the conduct of the [defendant],' and whether it
'related in some meaningful way either to the officer's
governmental status or to the performance of his duties</u>.'"
<u>Zambrana-Marrero</u>, <u>supra</u> at 126 (emphasis added). Additionally,
in the case of <u>Pritchell v. Callan</u>, it was stated that an
argument which focused on the plaintiff's "subjective reaction"
was erroneous, because it centers on "Pitchell's subjective
reaction to Callan's conduct rather than the nature of Callan's
and Sargis' activity and misses the essence of the color of law
requirement and the protection afforded by section 1983."
<u>Pritchell v. Callan</u>, 13 F.3d 545, 548-549 (2nd Cir.1994).

While the subjective reaction of John Doe #1, as asserted in his affidavit, may have some relevance, it does not garner as much relevance as the plaintiff/appellant gives it. Ultimately, those reactions are not as important to the determination as the actions of the defendant, and here defendant Waraksa's actions did not rise to a level necessary to be considered "under color of law," no matter what John Doe #1 may have subjectively believed.

In the appellant's brief, the plaintiff/appellant specifically outlines three cases, United States v. Giordano, Monsky v. Moraghan, and United States v. Temple, to try to support their position regarding the balance of the subjective beliefs of the plaintiff versus the actions of the defendant, in an attempt to try to argue that the District Court improperly granted summary judgment based on the color of law requirement. See Appellant's Brief, pp.23-30. These cases are, however, factually distinguishable from the case at hand, and the plaintiff/appellant misstates the weight afforded to the subjective beliefs of the plaintiff by each case.

First, the plaintiff/appellant cites to Monsky v. Moraghan to support the proposition that the decision for "under color of law" depends on the plaintiff's subjective beliefs. In Monsky, the plaintiff alleged that a judge had violated her right to free access to the court by permitting his dog to harass her

while she was in the clerk's office. <u>Monsky v. Moraghan</u>, 127
F.3d 243 (2nd Cir. 1997). There, the judge was permitted to
bring the dog to the courthouse because of his position and the
incidents all happened at the courthouse. <u>Id</u>. However, in this
case, all of the incidents are alleged to have happened at
defendant Waraksa's personal residence, not at any Emergency
Management events or facilities. <u>See Buckley Affidavit, ¶28;</u>
<u>Jane Doe Depo., p. 45; John Doe #1 Depo., pp. 32, 34.</u> The
plaintiff claims that the incidents took place on evenings prior
to emergency management events when Waraksa had sleepovers, but
the sleepovers were not officially connected to the Emergency
Management Agency events. <u>See Buckley Affidavit, ¶¶ 12, 14, 20,</u>
<u>28, 29; Jane Doe Depo., p. 44-45; John Doe #1 Depo., pp. 32, 34;</u>
<u>Buckley Depo, pg. 101.</u> Also, Waraksa had contact with the boy
outside of the sleepovers and Emergency Management Agency events
as well, as he and his wife were family friends of the child's
mother and the child was often at the Waraksa residence even
before the child became connected in any way with the emergency
management group. <u>See Jane Doe Depo, pp. 24-7, 31-35, 43, 59-60,</u>
<u>52-53, 75-76; Farrar Depo, pp. 20; John Doe Depo, pp. 34-35.</u>
Waraksa's position did not give him access to do what he did to
John Doe #1, he already had access to John Doe #1 prior to
joining the Emergency Management Group. This is unlike the judge
in <u>Monsky</u>, because there, the judge was only able to bring his

dog to the clerk's office because of his position, and therefore, the harassment alleged could have only happened because of his position, whereas Waraksa had opportunities to be around John Doe #1 in other situations outside of Emergency Management events. Additionally, while the plaintiff points to the language that stated that the judge did not "explicitly" assert his authority, it was still implicit in the fact that they were in the courthouse with the courthouse staff assenting to the activity because of his position as a judge. See Monsky, supra at 246. Defendant Waraksa, however, did not have the type of authority as the judge, and perhaps more significantly, his actions never took place at any Emergency Management events. Any "implicit authority" is absent due to his lack of any connection to either an authoritative position or any incidents occurring in conjunction with any official events or duties.

The next case cited by the plaintiff/appellant is United States v. Giordano. Giordano involves a situation in which the mayor, a public official/employee, was charged with sexually assaulting two young girls. Beyond the similarity of the nature of the claim of sexual impropriety, there are no further similarities between that case and this one. See generally, United States v. Giordano, 442 F.3d 30 (2nd Cir. 2006). The plaintiff argues that "[t]here was no objective evidence that Giordano ever used his power as Mayor to perpetrate the sexual

assaults." <u>Appellant's Brief, p. 25.</u> However, in <u>Giordano</u>, the
state actor was, indeed, the mayor, a person who has authority
apparent from his position. Further, in the <u>Giordano</u> matter, the
evidence demonstrated that he actually made threatening
statements to his victims regarding going to jail. <u>Giordano</u>,
<u>supra</u> at 35-36. The evidence demonstrated not solely the
victim's subjective beliefs but also Giordano's actual
authoritative position as mayor, and more particularly that
Giordano made actual threats of incarceration. Therefore, the
Court found that he had acted "under color of law" not because
of what the victim's believed, but because of the actions
Giordano took which made the victim's believe it via the use of
threats and intimidation. <u>Giordano</u>, <u>supra</u> at 47. Thus, the
plaintiff/appellant's reliance on <u>Giordano</u> is misplaced. In this
case, there is no evidence that defendant Waraksa made any kind
of statements regarding his authority or threatened that he
would do anything because of any authority or power he may have
had. Also, Waraksa was not in a position that generally connotes
power and authority such as a mayor or police officer, he was,
instead, part of the Emergency Management team.

The Court in <u>Giordano</u> also noted that "[t]he fact that
someone holds an office or otherwise exercises power under state
law does not mean, of course, that any wrong that person commits
is 'under color of law.' 'It is clear that under 'color' of law

21

means under 'pretense' of law. Thus acts of officers in the
ambit of their personal pursuits are plainly excluded.'
Giordano, supra. at 43. Furthermore, the Court explained
"[m]oreover, we have found that officials acted under color of
law when their misuse of official power made the commission of a
constitutional wrong possible, even though the official
committed abusive acts for personal reasons far removed from the
scope of official duties." Giordano, supra at 44 (emphasis
added). Here, there was no misuse of official power, and even if
it is argued that there was, that was not what made the abuse
possible, as defendant Waraksa already had access to John Doe #1
due to his personal relationship with John Doe #1's family. See
Jane Doe Depo, pp. 24-7, 31-35, 43, 59-60, 52-53, 75-76; Farrar
Depo, p. 20; John Doe Depo, p. 34-35.

Finally, the plaintiff/appellant cites to United States v.
Temple. In that case, the actor was an IRS employee who verbally
threatened two police officers with audits. United States v.
Temple, 447 F.3d 130, 132-133 (2nd Cir. 2006). Although the
employee did not have the authority to do so, her position gave
the appearance of the ability to do the things she threatened.
Id. at 138-139. Temple is also distinguishable from this case.
The IRS employee in Temple made outright threats related to her
position and also her position gave her an appearance of
authority. See Id. It was not just the victims' subjective

beliefs that were determinative on the issue, but rather Temple's outright threats to use her position, and her position itself which could be seen as one with authority to carry out her threats. Id. Here, however, defendant Waraksa never made any threats or statements related to his position as a member of the Emergency Management team and his was not a position that came with the appearance of authority of power to arrest or otherwise control. Additionally, the plaintiff/appellant again misstates the holding of the Court. The plaintiff/appellant argues that "[the majority in *Temple* further bolstered the justification of its ruling by noting that in the *Giordano* case, the victim's subjective belief in their attacker's state authority, even without a specific threat under the guise of that authority, was sufficient to determine that he acted 'under color of law.'" Appellant's Brief, p. 27. However, the Court in Temple actually stated:

> Recently, in *United States v. Giordano,* 442 F.3d 30 (2d Cir.2006), a case involving sexual abuse of minors by a mayor, we held that the mayor acted under color of law by "actively and deliberately us[ing] his apparent authority as mayor to ensure that the victims did not resist or report the ongoing abuse." *Id.* at 47. The evidence here, insofar as it pertains to "color of law," is even more compelling than it was in *Giordano.* Here, there was a specific and direct threat under the guise of apparent authority, while in *Giordano* it appears that no specific and direct threat to invoke official authority ever was made.

United States v. Temple, supra at 139.

While the Court noted that there was no "specific and direct threat" made by Giordano, there were still threats, that when coupled with his position of authority and the nature of the threats, would show abuse of authority as mayor because someone in a lower position making those same statements would not have yielded the power he did in making them. See Giordano, supra. Here, Defendant Waraksa never made any threats, either explicit or implicit, specific and direct, or not.

The plaintiff/appellant's contention that the focus of the inquiry in this matter should be on the plaintiff's subjective belief is misplaced. While that may be a small part of the inquiry, the more probative inquiry, and thus the focus, is whether the defendant invoked his authority and whether any threats were made. See Zambrana-Marrero, supra at 126; see also Giordano, supra; Temple, supra; Monsky, supra.

More analogous and persuasive is Roe v. Humke, 128 F.3d 1213, 1213-1215 (8th Cir. 1997). In Roe, the defendant was a police officer who met the plaintiff while acting in his official capacity and working with the school where the plaintiff was a student. Id, at 1213-1215. The defendant would talk to the plaintiff several times a week at school, buy her candy and soda, hug and kiss her from the police car, and drive by her house and speak with her when he was on duty. Id. The

defendant often asked the plaintiff and her friends to go to his home and ride all-terrain vehicles, to which the plaintiff eventually consented. Id. The defendant picked up the defendant at her home while he was off duty, in plain clothes, and was driving his personal vehicle, and with the permission of the plaintiff's mother and step-father. Id. The defendant then took the plaintiff and another young girl to his farm to ride all-terrain vehicles, and he hugged, kissed, and fondled the plaintiff while they were riding. Id. The plaintiff saw the defendant the following Tuesday, when she said he gave her a "scary" look and asked her if she had a good time, which she felt was pressuring her not to say anything. Id. The Court held that the defendant

> was not acting under color of state law because he was
> neither actually acting in his official capacity or
> exercising his responsibilities pursuant to state law,
> nor purporting to so act. Humke took Doe to his farm for
> his own personal pursuits, not for any purpose
> legitimately or purportedly related to the exercise of
> his responsibilities as a police officer. As the
> district court pointed out, Humke was off-duty, was not
> wearing his uniform or badge or carrying a gun, and was
> driving his personal vehicle.

Id. at 1216.

    Defendant Waraksa was in the same position as Humke. The sleepovers were not an official part of the Emergency Management events, they were not part of his responsibilities, if any, related to the children who attended the Emergency Management

25

event, but rather for his own personal pursuits, and they were outside the ambit of any responsibility he may have allegedly had in relation to the children's participation at the events.[1] Like the "scary" stare alleged by the plaintiff in Roe, anything defendant Waraksa may have done, was not enough to raise his action to the level of being "under color of law."

As discussed above, the plaintiff/appellant's contentions regarding the weight of the plaintiff's subjective reaction are incorrect. It has clearly been held that the plaintiff's subjective reaction is only a small part of the determination of whether the defendant's actions are considered "under color of law." What is more probative is the defendant's action, and it has been seen that some action to indicate authority and an intention to assert that authority, whether explicit or implicit, is necessary. In this case, defendant Waraska's actions were outside the ambit of his responsibilities of the Emergency Management program and events and were purely personal and private. Additionally, defendant Waraksa did not make any threats that would have implicated any authority he may have been believed to have. His actions were strictly outside of his authority as a member of the Emergency Management Agency, and

---

[1] There was never a formal troop or organization formed as part of the Emergency Management Agency, Buckley just agreed to let the children attend the events, but no formal structure was in place and Waraksa was not put in charge of anything. See Buckley Affidavit, ¶11, Buckley Depo., pgs. 50-51.

therefore, his actions were not "under color of law." Thus, the District Court properly ruled that his actions were not "under color of law" and properly granted summary judgment.

## II. The District Court Did Not Make Improper Credibility Findings As To the Affidavit Testimony of John Doe #1

The plaintiff-appellants' arguments that there was any alleged credibility determination by the District Court are misplaced.[2] The District Court did not make any credibility determinations, but rather looked at all of the information and evidence before the Court. Even in a light most favorable to the plaintiff, the Court did not find any genuine issues of a material fact.

The District Court's memorandum of decision does not make determinations regarding the credibility of the affidavits. The District Court recognized and gave full credit to John Doe #1's statements in his affidavit. See Memorandum of Decision, p. 21, 23. The Court, however, noted that the plaintiff was attempting to "side step around the critical inquiry into whether Waraksa actively and deliberately abused or misused the power conferred upon him by virtue of his position." Memorandum of Decision, pp. 21.

_____

[2] While the plaintiff may be correct in the assertion that credibility determinations are a jury function and not for the judge; see generally, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Castillo v. United States, 34 F.3d 443 (7th Cir. 1997); Lipton v. The Nature Co., 71 F.3d 464 (2d Cir. 1995); Colby v. Klune, 178 F.2d 872 (2d Cir. 1949); there is no basis for this issue to be raised her.

The District Court also noted that the

> inference [urged by the plaintiff] was not supported by
> any facts in the record... [T]he undisputed facts
> demonstrate that Waraksa did not actively and
> deliberately abuse or misuse any power conferred upon
> him by state authority when he sexually abused John
> Does 1, 2, or 3. John Doe 1 explained that instead of
> threatening him or inducing him based on his official
> power or authority, Waraksa bribed him by buying things
> like model train magazines and accessories. According
> to John Doe 1, Waraksa was 'basically bribing me to
> keep my mouth shut.' Moreover, there was no nexus
> between these "bribes" and Waraksa's position in the
> Emergency Management Agency.... This lack of a nexus
> further bolsters the conclusion that Waraksa's private
> conduct was unaided by an indicia of ostensible state
> authority.

Memorandum of Decision, pp. 22-23(emphasis added).

The Court also recognized that John Doe #1 may not have
reported the incidents of abuse because of Waraksa's perceived
connection to the police and firefighters and his position on
the Emergency Management Agency, but noted that there was no
evidence of Waraksa actually threatening John Doe #1 based upon
those facts. Memorandum of Decision, P.23. The District Court
stated:

> unlike the mayor in *Giordano*, Waraksa's position as a
> volunteer member of the Agency gave him no apparent
> authority to control the police or fire department. In
> *Giordano*, the Second Circuit noted that the victim's
> legitimately believed his threats of arrest by virtue of
> the aura of power Giordano invoke as mayor. Consequently
> no trier of fact could conclude that Waraksa actively and
> deliberately threatened John Doe 1 into silence by
> invoking his apparent authority as a member of the
> Emergency Management Agency.

Memorandum of Decision, p. 23 (internal citations omitted).

28

Furthermore, the District Court held that in viewing the evidence in the light most favorable to the plaintiffs,

> at best the evidence demonstrates that John Doe 1 did not resist or report the sexual abuse because of his awareness of Waraksa's position in the Emergency Management Agency and not as the result of any affirmative act Waraksa took to assert such authority. John Doe 1's affidavit clearly demonstrates that his failure to resist and report the abuse was based on his awareness of Waraksa's position and his sense that Waraksa had authority over him by virtue of that position. As discussed above, a plaintiff's knowledge of a defendant's status as a state official 'is not sufficient to convert the actions [the defendant] took in the pursuit of his private interest into action taken under color of law.' [3]

Memorandum of Decision, p. 24 (internal citations omitted).

As is evident in the Memorandum of Decision granting the defendants' Motion for Summary Judgment, the District Court recognized and credited John Doe #1's assertions in his affidavit. However the Court also recognized that the statements of John Doe #1, as well as the remainder of the evidence, was

---

[3] The Court went on to note "The color of law inquiry focuses on the action the official took and not on what the victim knew about the official at the time of the incident. In the absence of any actual abuse or misuse of state power by a defendant, a plaintiff's subjective reaction to a state official's conduct is irrelevant to the color of law analysis. Because there is no evidence that Waraksa deliberately and actively invoked his authority as a member of the Emergency Management Agency and as a supervisor of the cadet program, it would be an error to focus on John Doe 1's subjective reaction to Waraksa's conduct as that would 'miss the essence of the color of law inquiry.'"

Memorandum of Decision, p. 24 (internal citations omitted).

not sufficient to show there was an issue of fact as to whether Waraksa's actions were taken "under color of law." There were no assertions by John Doe #1 in the affidavit, his deposition testimony, or in any other documentation or evidence provided to the Court that Waraksa ever threatened him. John Doe #1 simply subjectively believed Waraksa had power. The District Court properly concluded that that alone is insufficient to establish a genuine issue of fact as to Waraksa having acted "under color of law."

<u>**CONCLUSION**</u>

For the foregoing reasons, the District Court's granting of summary judgment should be upheld.

Defendant, Mary Buckley

/s/ Claudia A. Baio                    /s/ Joseph M. Busher, Jr.
Claudia A. Baio                         Joseph M. Busher, Jr.
Baio & Associates, P.C.                 Jackson O'Keefe
15 Elm Street                           36 Russ Street
Rocky Hill, CT 06067                    Hartford, CT 06106
Tele:.(860) 571-8880                    Tele:.(860) 278-4040
Federal Bar No. ct04836                 Federal Bar No. ct18323
Her Attorney                            Her Attorney
E-Mail: cbaio@baiolaw.com               E-Mail: JMBusher@jacksonokeefe.com

## <u>CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(A)</u>

I hereby certify that this brief complies with the requirements of Fed. R.App.P. 32(a)(5) and (6) because it has been prepared in a monospaced face font, not exceeding 10.5 characters per inch and contains 6,379 words.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word.

/s/ Claudia A. Baio              /s/ Joseph M. Busher, Jr.
Claudia A. Baio                  Joseph M. Busher, Jr.

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been sent to all counsel of and pro se parties this 21st day of October, 2013 as follows:
Joseph V. Meaney, Jr. Esq.
Kyle Pavlick, Esq.
Cranmore, Fitzgerald & Meaney
49 Wethersfield Avenue
Hartford, CT 06114


David G. Carlson, Esq.
200 North Main Street
East Longmeadow, MA 01028

Attorney Beatrice Jordan
Thomas Gerarde, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Correctional
Hartford, CT 06114

Jeffrey Fritz, Esq.
Day Pitney, LLP
242 Trumbull Street
Hartford, CT 06103

Peter Waraksa Inmate # 336484
MacDougall-Walker

Institution
1153 East Street South
Suffield, CT 06080


/s/ Claudia A. Baio
    Claudia A. Baio

/s/ Joseph M. Busher, Jr.
    Joseph M. Busher, Jr.